825 F.2d 238
 126 L.R.R.M. (BNA) 2179
 RAILWAY LABOR EXECUTIVES' ASSOCIATION, Petitioner,
v.
INTERSTATE COMMERCE COMMISSION, Respondent,
Rarus Railway Corporation; Butte Anaconda & Pacific Railway
Company, Intervenor,
United States of America, Respondent.
 No. 86-7384.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 4, 1987.
Decided Aug. 18, 1987.
 
 John O'B. Clarke Jr., William G. Mahoney, and John J. Delaney, Washington, D.C. for petitioner.
 Robert J. Corber, Washington, D.C. for intervenor-respondents.
 Dennis J. Starks, Washington, D.C. for respondents.
 Petition to Review a Decision of the Interstate Commerce Division.
 Before POOLE and CANBY, Circuit Judges, and RAMIREZ,* District Judge.
 CANBY, Circuit Judge:
 
 
 1
 Railway Labor Executives' Association (RLEA) petitions for review of the Interstate Commerce Commission's decision not to impose labor protective conditions on the transfer of railroad property from the Butte, Anaconda & Pacific Railway Company (BAP) to the Rarus Railway Corporation (Rarus). RLEA argues that the ICC's decision not to impose labor protective conditions on the selling carrier, BAP, was arbitrary and capricious.
 
 FACTS
 
 2
 The Butte, Anaconda & Pacific Railway was constructed in 1894 to provide rail service between the copper mines of the Anaconda Mining Company in Butte, Montana and the copper smelter in Anaconda, Montana, a distance of 26 miles. BAP expanded until it owned almost 118 miles of railroad line.
 
 
 3
 On November 27, 1984, BAP filed an application with the ICC for authority to abandon its entire rail line and to discontinue service over 0.4 miles of line owned jointly by BAP and another carrier. While its abandonment application was pending, BAP contracted to donate in part and sell in part its entire rail line to the State of Montana, which in turn leased the line to the Rarus Railway Corporation for operation.[1] Rarus then petitioned the ICC not to impose labor protective conditions on the transaction. See Rarus Railway Corporation--Exemption from 49 U.S.C. 10901 and 11301, ICC Finance Docket No. 30640 (April 12, 1985) [Rarus Decision]. The ICC granted Rarus' petition and declined to impose labor protective conditions on the transaction. Id. It then dismissed BAP's abandonment application, Butte, Anaconda & Pacific Railway Co.--Abandonment--In Deer Lodge and Silver Bow Counties, MT, ICC Docket No. AB-235 (May 8, 1985) [BAP Decision], and denied RLEA's subsequent appeal and petition to reopen the Rarus proceeding. Butte, Anaconda & Pacific Railway Co.--Abandonment--In Deer Lodge and Silver Bow Counties, MT, ICC Docket No. AB-235 and Rarus Railway Corp.--Exemption from 49 U.S.C. 10901 and 11301, ICC Finance Docket No. 30640 (April 10, 1986) [Consolidated Decision]. RLEA petitions for review of all these orders.
 
 STANDARD OF REVIEW
 
 4
 This court has recently considered the proper standard for reviewing an ICC decision not to impose labor protective conditions on a railway acquisition. See Railway Labor Executives' Ass'n v. ICC, 784 F.2d 959, 963-64 (9th Cir.1986). In Railway Labor, we said that we will uphold the ICC's decision unless it is "arbitrary, capricious or manifestly contrary to the statute." 784 F.2d at 964, quoting Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). We also said that "[a]n agency's determination is arbitrary and capricious when the agency fails to consider all relevant and important factors or does not articulate a satisfactory explanation for its decision." Railway Labor, 784 F.2d at 964; see also Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983).
 
 DISCUSSION
 
 5
 A rail carrier may abandon a rail line or transfer a rail line to a non-carrier only if the Interstate Commerce Commission (ICC) finds that present or future public convenience and necessity require or permit the change. See 49 U.S.C. Sec. 10901 (regulating acquisitions of rail lines by non-carriers); 49 U.S.C. Sec. 10903 (regulating abandonments). The ICC is generally required to impose labor protective conditions when it approves an abandonment under section 10903, see 49 U.S.C. Sec. 10903(b)(2), but the imposition of labor protective conditions in transfer proceedings under section 10901 is discretionary. See 49 U.S.C. Sec. 10901(c)(1).
 
 
 6
 In Railway Labor Executives' Ass'n v. ICC, 784 F.2d 959 (9th Cir.1986), we (1) upheld the ICC's decision to treat the transfer of the Eel River railroad line to a non-carrier as an acquisition under section 10901 rather than as an abandonment that could give rise to the mandatory labor protections of 49 U.S.C. Sec. 10903(b)(2); but (2) refused to enforce the ICC's orders declining to impose section 10901 labor protections on the vendor railroad because the ICC did not articulate a satisfactory explanation for its decision. We noted that
 
 
 7
 [n]one of the carefully articulated, reasoned balancing of factors pertinent to the particular acquisition or reference to special circumstances employed by the ICC in Knox and Kane and Gulf & Mississippi appears in the ICC's orders here. The ICC here had before it an uncontradicted and detailed affidavit which provided the basis for calculating the costs to NWP of imposing conditions. It also had access to the financial status of NWP, and knew the gain to NWP from the sale by the terms of the acquisition agreement. Equally, the ICC had the information to assess the beneficial impact both on former NWP workers and rail employment generally from imposing protections. The ICC could also have taken account of NWP's possible windfall gain from the sale of the line without labor protections over abandonment of the line. The ICC could have weighed these factors against any demonstrable deterrent effect on the consummation of the acquisition transaction from imposing conditions on the vendor, and the benefits of the sale with and without conditions to the development of national rail transportation policy, such as the promotion of efficient short-line rail carriers.
 
 
 8
 The ICC's failure to address any of these important issues renders the ICC's decisions in these orders arbitrary and capricious.
 
 
 9
 784 F.2d at 972-73.
 
 
 10
 In the present case, RLEA does not dispute the ICC's decision to treat the transaction as a transfer under section 10901 rather than as an abandonment under section 10903, and we affirm that part of the Commission's order. RLEA argues instead that the ICC's decision not to impose labor protective conditions on BAP under section 10901 was arbitrary and capricious because the ICC failed to apply the law to the specific facts of this case.
 
 
 11
 We agree. The Rarus decision contains no substantive discussion of the ICC's decision not to impose conditions on BAP.[2] The Consolidated Decision discusses only one of RLEA's arguments for imposing conditions and fails to address any "factors pertinent to the particular acquisition," as mandated by Railway Labor, 784 F.2d at 972,[3] mindful of the fact that the ICC has announced that "no conditions will be imposed as a matter of course on the seller" in a rail line acquisition and that the imposition of conditions will normally be considered only after an affected party has filed a petition to revoke under section 10505(d). See Class Exemption for the Acquisition and Operation of Rail Lines under 49 U.S.C. Sec. 10901, --- I.C.C.2d ---, Ex Parte No. 392 (Sub No. 1) (December 19, 1985). Such a policy is clearly within the Commission's discretion. Yet regardless whether the Commission considers protective conditions in an order approving an acquisition or after a revocation petition, under Railway Labor the Commission is required to present a "carefully articulated, reasoned balancing of factors pertinent to the particular acquisition." 784 F.2d at 972. The ICC has failed to give this kind of explanation in any of its three orders in the present case.
 
 
 12
 We therefore (1) affirm the ICC's decision to treat this transaction as an acquisition under section 10901; but (2) remand the question of section 10901 labor protective conditions to the ICC for further proceedings consistent with this opinion.
 
 
 13
 AFFIRMED IN PART AND REMANDED IN PART TO THE ICC.
 
 
 
 *
 The Honorable Raul Ramirez, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 Rarus is a Montana corporation formed for the express purpose of operating BAP's rail line
 
 
 [2]
 The Rarus decision contains only one sentence about the decision not to impose conditions on BAP: "[n]or do we see any reason to impose the burden of labor protection on BAP under the circumstances here." Rarus decision at 2
 
 
 [3]
 After tracing the evolution of its section 10901 policy, the ICC explained its decision not to impose labor protective conditions in this case as follows:
 [W]e agreed to consider case-by-case arguments that particular cases warranted labor protection. We must now consider whether RLEA has shown sufficient reasons for imposing protective conditions under the facts of the instant transaction.
 RLEA argues that conditions should be imposed on the sale because it was tainted, as shown by subsequent actions. We do not agree with RLEA that the fact that Montana and Rarus filed a notice of exemption, under 49 C.F.R. 1152.50, to abandon the Smelter Line shows that BAP's transfer of its entire line was a subterfuge or in any way improper. RLEA's argument that, had the Smelter Line not been transferred to Montana, BAP would have had to continue to prosecute its abandonment application in connection with that line, leaving BAP susceptible to the imposition of the Oregon Short Line conditions, is based on inaccurate assumptions. If BAP had transferred all of its track except the Smelter Line, it would still have been able to rely on the Commission's policy of not imposing labor protection in entire line abandonments. [citations omitted] After BAP transferred its other property and operations, the Smelter Line would then have become the entire line of BAP. RLEA's submissions fail to reflect the fact that BAP has entirely removed itself from the rail carrier industry. The fact that the Smelter Line was abandoned by Montana and Rarus cannot be used to impugn the motives and intent of BAP; otherwise, Montana and Rarus could never seek abandonment of any part of the line without exposing BAP to allegations of subterfuge and wrongful manipulation.
 We conclude that this appeal contains no new evidence or logical rationale which warrants the reversal of our decision. All of RLEA's remaining arguments, including the argument that labor protective conditions should be imposed 'to prevent manifest injustice', were previously considered in these related proceedings and found to be without merit. RLEA here has shown no good cause for modifying the prior decisions by imposing labor protective conditions.
 Consolidated Decision at 7-8.